IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES CAPUANO, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Civil Action No.: 06 C 5924 |
| CONSOLIDATED GRAPHICS, INC., MULTIPLE IMAGES, INC., and MULTIPLE IMAGES ACQUISITION COMPANY | ) Suzanne B. Conlon, Judge ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

James Capuano sues his former employer Consolidated Graphics, Inc. ("Consolidated Graphics") and two of its subsidiaries, Multiple Images, Inc. and Multiple Images Acquisition Company. In addition to claims under Illinois law, he alleges discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Count IV), and disability discrimination under the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. § 5 *et seq.* (Count V). Defendants move for sanctions against Capuano's attorneys, Brian E. Devilling, Paul Bozych, and Clausen Miller PC, pursuant to Fed. R. Civ. P. 11(c) on the ground that Counts IV and V are time-barred. For the reasons stated below, the motion for sanctions is granted.

## BACKGROUND

The following facts are undisputed unless otherwise noted. Multiple Images, Inc. is a printing business incorporated in Illinois by James Capuano. On August 2, 1999, Consolidated Graphics purchased Multiple Images, Inc. and operated Capuano's former company as a division of Consolidated Graphics. Under the purchase agreement, Capuano and Consolidated Graphics

executed an employment and noncompetition agreement. The parties agreed that Capuano would continue serving as president of Multiple Images, Inc. for five years, with an annual option for renewal for one-year periods, at an annual salary of $180,000.00. Consolidated Graphics could terminate Capuano's employment agreement at any time for cause.

In 2003, Capuano started a separate business venture called Veterans Print Management to broker print jobs to Consolidated Graphics. Pl. Resp., Ex. B at 28-29. Consolidated Graphics renewed Capuano's employment for one-year periods in August 2004 and 2005. By October 2005, however, the relationship between Capuano and Consolidated Graphics appears to have fallen apart. On October 23, 2005, Capuano and Joseph Davis, chief executive officer of Consolidate Graphics, met in Houston, Texas; Capuano was asked to resign. *Id.* at 53-55, 119. Capuano claims Davis asked him to resign due to his pain and disability. The parties dispute whether Capuano agreed to resign at the Houston meeting, but Capuano knew after the meeting that his employment had been terminated. *Id.* at 32. He stopped going to the office and no longer received a salary after October 31, 2005. *Id.* at 190-191.

Between October 31, 2005 and December 5, 2005, Capuano wrote a letter to Davis declining to resign. Def. Appendix, Capuano Dep. Ex. P. On December 5, 2005, the law firm of Clausen Miller, by Brian E. Devilling, sent a letter on Capuano's behalf to Michael Barton, executive vice president of Consolidated Graphics, stating that Capuano was "forced . . . to resign because of his physical condition," and they were "prepared to file actions under the Americans with Disabilities Act." Def. Mot., Ex. A. Barton responded on December 15, clarifying that Capuano had been "terminated effective October 31, 2005 under the *For Cause* provisions [Section 15 (b)(VI)] of [his] employment agreement." Def. Appendix, Capuano Dep. Ex. R (emphasis in original). The parties

agree that Capuano received Barton's termination letter on December 16, 2005, and that Capuano understood he was terminated.

On October 31, 2006, Capuano simultaneously filed an ADA charge with the Equal Employment Opportunity Commission, as well as a three-count complaint with this court. Capuano's ADA charge was cross-filed with the Illinois Department of Human Rights on November 1, 2006. On December 19, 2006, the EEOC issued a notice of right to sue. Capuano amended his complaint in this case on March 6, 2007, by adding Counts IV (Unlawful Discrimination Under the Americans with Disabilities Act) and V (Unlawful Discrimination under 775 ILCS § 5 *et seq.*). The amended complaint was signed by Devilling and lists Bozych, Devilling and the Clausen Miller law firm as attorneys for Capuano.

On May 2, 2007, Consolidated Graphics sent Devilling an email attaching a draft of the present sanctions motion, along with a supporting memorandum. Def. Mot. ¶ 6; Pl. Resp. Ex. C, p. 2. The Rule 11 safe harbor notice was implicitly based on Consolidated Graphics' contention that Counts IV and V were time-barred. Def. Mot. ¶ 4. Devilling responded by email that Counts IV and V were not frivolous because the continuing violation doctrine applied to the discrimination charges, and that Counts IV and V would not be withdrawn. He wrote that if defendants proceeded with the Rule 11 motion, he would "file a countermotion under Rule 11 seeking costs, as I believe you have little to no basis to assert that our conduct has been sanctionable." Pl. Resp., Ex. C.

On May 7, defense counsel responded to Devilling's continuing violation argument, citing Supreme Court authority that the doctrine did not apply to post-termination situations. Def. Reply, Ex. 2. Defendants again demanded that Capuano withdraw Counts IV and V. On June 14, 2007, defendants filed their Rule 11 motion for sanctions.

3

## DISCUSSION

### I. Rule 11 Sanctions

Rule 11 imposes an affirmative duty of reasonable investigation by an attorney "signing, filing, submitting, or later advocating" any court document. Fed. R. Civ. P. 11(b); *see also U.S. Bank Nat'l Assoc., N.D. v. Sullivan-Moore*, 406 F.3d 465, 469-470 (7th Cir. 2005) (Rule 11 requires counsel to read and consider before litigating). Sanctions are appropriate if the claims are either frivolous or advanced for an improper purpose. Fed. R. Civ. P. 11(c); *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir. 1988); *Shelton v. Ernst & Young, LLP*, 143 F. Supp. 2d 982, 993 (N.D. Ill. 2001). "Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees." Fed. R. Civ. P. 11(c)(1)(A); *see also Sullivan-Moore*, 406 F.3d at 471 (Rule 11 sanctions imposed on all attorneys in law firm was not unreasonable).

Defendants seek sanctions against Devilling, Bozych, and Clausen Miller PC because Capuano's disability discrimination claims are frivolous. Claims are frivolous if after reasonable inquiry, a "competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Indianapolis Colts v. Mayor and City Council of Baltimore*, 775 F.2d 177, 181 (7th Cir. 1985) (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985)) (internal quotation marks omitted). The imposition of sanctions under Rule 11 requires an objective determination of whether the attorney's investigation was reasonable under the circumstances and whether the arguments actually argued by the attorney are reasonable. *Edidin*, 845 F.2d at 752. Weak arguments, if reasonable, are not sanctionable. *Bilharz v. First Interstate*

4

*Bank of Wis.*, 98 F3d 985, 989 (7th Cir. 1996).

Devilling and Bozych argue the discrimination claims in Counts IV and V of the amended complaint are not frivolous under the continuing violation doctrine. A plaintiff may seek relief for a time-barred act if it is linked with an act within the relevant limitations period. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). The record does not support relief under the continuing violation doctrine or its extension or modification because Capuano's employment was terminated before the purported discriminatory conduct within the limitations period. Accordingly, the discrimination claims in Counts IV and V are frivolous and sanctions are appropriate.

## II. The ADA and IHRA Claims are Time-Barred

An ADA employment discrimination charge must be filed with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1), *incorporated by* 42 U.S.C. § 12117(a). The filing period is extended to 300 days if the "person aggrieved has initially instituted proceedings with a State or local agency." *Id.* In Illinois, an employee who initially files a grievance with the Department of Human Rights benefits from the 300-day extension for filing with the EEOC. 42 U.S.C. § 2000e-5(e)(1), *incorporated by* 42 U.S.C. § 12117(a); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). Failure to file within either 180 or 300 days renders the charge untimely. *Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 707 (7th Cir. 1995).

Capuano does not allege that he filed an initial charge with the IDHR in order to benefit from the 300-day filing period. *See* 775 Ill. Comp. Stat. § 5/7A-102(A)(1) (charge must be filed within 180 days after a civil rights violation has allegedly been committed). Defendants learned through a FOIA request that Capuano's EEOC charge was filed concurrently with the IDHR. The parties

assume that 300 days is the proper EEOC filing period, though 180 days may in fact be correct. Capuano's discrimination charges are untimely under either time period.

Capuano alleges his termination was a discriminatory employment action based on his disability. He filed his EEOC charge on October 31, 2006. Accordingly, any claims are time-barred if Capuano knew the basis for his claim on or before January 5, 2006. He acknowledges that as of October 31, 2005, "he was aware that his pain and physical condition were factors that motivated [Consolidated Graphics'] decision" to terminate him. Pl. Resp. at 5. He also acknowledges he received a termination letter from Consolidated Graphics on December 16, 2005. The record clearly establishes Capuano knew of the basis for his termination more than 300 days before filing his EEOC charge. Using the more generous December 16, 2005 action, he was 19 days late. Accordingly, Capuano is precluded from bringing a disability claim based solely on the termination.

## III. The Continuing Violation Doctrine is Inapplicable

Under the continuing violation doctrine, a plaintiff may seek relief for a time-barred act by linking it to an act within the limitations period. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). "For purposes of the limitations period, courts treat such a combination as one continuous act that ends within the limitations period." *Id.* There are three viable theories available to establish a continuing violation. *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 707 (7th Cir. 2002); *see also Selan*, 969 F.2d at 565.

First, a limitations period may be tolled when an employer made employment decisions over time that made it difficult for the employee to determine the actual date of discrimination. *Tinner*, 308 F.3d at 707. This theory is inapplicable because Capuano was able to determine the actual dates of the allegedly discriminatory conduct. Even if Capuano's employment status was unclear to him

following the October 23, 2005 meeting, he has pointed out specific dates and instances where he thought he was the subject of discrimination. He knew on October 31, 2005 that he was terminated and believed that his disability motivated this decision. Furthermore, he acknowledges receipt of the December 15, 2005 termination letter. These actions occurred at least 319 days before the EEOC charge was filed.

The second theory involves an express discriminatory policy of the employer. *Id.* This theory is not relevant because Capuano has not alleged that defendants had an express policy of discriminating against persons with disabilities.

The third theory involves a situation "where discrete acts of discrimination are part of an ongoing pattern and at least one of the discrete acts occurred within the relevant limitations period." *Id.* The court must determine whether it was reasonable for Capuano to wait until October 31, 2006 to file his EEOC charge, given that he considered the October and December 2005 termination actions discriminatory when they happened.

Capuano alleges that following his termination there were other incidents that were part of an ongoing pattern of discrimination by Consolidated Graphics. Namely, he states that during discussions leading up to his termination, he was told he would be able "earn a good living" by brokering print jobs to Consolidated Graphics and its subsidiaries through his separate business, Veterans Print Management. Pl. Resp. at 1, 2, 5. According to Capuano, he had little success because Consolidated Graphics failed to act in good faith in its dealings with Veterans Print Management. Capuano argues that it was not until August 2006 that he realized he would not be able to make a living brokering jobs to Consolidated Graphics, and then the discriminatory effects of his termination became apparent to him.

7

The failure of Veterans Print Management to secure print jobs does not save Capuano's time-barred claims for two reasons. First, discrete discriminatory acts are not actionable if they occurred more than 180 or 300 days before filing the EEOC charge, even when they are related to acts alleged in a timely filed charge. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Discriminatory termination is a discrete act that "constitutes a separate actionable 'unlawful employment practice.'" *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 724 (7th Cir. 2004) (quoting *Morgan*, 536 U.S. at 114). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 114.

Assuming for purposes of this motion that Consolidated Graphics' failure to broker print jobs to Capuano following his termination was related to his allegedly discriminatory termination, it would not save his termination claims. The alleged October and December 2005 discriminatory termination actions are separately actionable and occurred at least 319 days before Capuano filed his EEOC charge. Accordingly, Capuano's termination claims are time-barred by Title VII's 300-day statute of limitations.

Even if Capuano could prove a relationship between Consolidated Graphics' failure to broker jobs to Veterans Print Management and the allegedly discriminatory termination, his allegations of post-termination actions do not constitute unlawful employment actions proscribed by the ADA. The ADA only protects employees, not independent contractors. 42 U.S.C. § 12111(4); *Flannery v. Recording Ind. Ass'n of Am.*, 354 F.3d 632, 642 (7th Cir. 2004). Veterans Print Management is an independent print brokerage business, solely owned by Capuano. Consolidated Graphics does not have any financial stake in Capuano's company. Capuano, as an independent print job broker, has no standing under the ADA to sue Consolidated Graphics for alleged discriminatory actions.

*Flannery*, 354 F.3d at 642 (independent contractors do not have standing to sue under the ADA).

For these reasons, it was not reasonable for Capuano to wait until October 31, 2006 to file his charge with the EEOC based on his termination on October 23, 2005 or, at the very latest December 16, 2005. The termination was a discrete discriminatory act and the continuing violation doctrine is inapplicable.

Capuano's arguments for applying the continuing violation doctrine are not based in fact or relevant law. In fact, none of the cases cited by Devilling and Bozych in their response to the motion for sanctions support their argument that the October 2005 actions of Consolidated Graphics are saved by the continuing violation doctrine.

On May 2, 2007, Consolidated Graphics' counsel provided Devilling with a draft of its motions for sanctions and accompanying memorandum, 44 days prior to filing the motion, in compliance with Rule 11's safe-harbor provision. Five days later, defense counsel sent a follow up letter to Devilling explaining that the continuing violation doctrine was inapplicable under *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) and demanding that he withdraw Counts IV and V. Accordingly, Capuano's attorneys had more than a sufficient opportunity to conduct a reasonable investigation and were on notice that Counts IV and V were time-barred.

In its motion for sanctions and accompanying memorandum, defense counsel cited *Shelton, supra*, a factually similar case from this court. *Shelton v. Ernst & Young, LLP*, 143 F. Supp. 2d 982 (N.D. Ill. 2001) (Rule 11 sanctions imposed on plaintiff's attorneys for failure to withdraw time-barred Title VII claims after notice that their continuing violation argument was frivolous). While the decision is not controlling authority, Devilling and Bozych failed to address or attempt to distinguish this case in their response to the motion for Rule 11 sanctions. This clearly indicates that

Capuano's counsel did not conduct a reasonable investigation and ignored the factual and legal considerations that rendered Counts IV and V frivolous.

## CONCLUSION

A reasonable investigation by Capuano's counsel would have revealed that Counts IV and V are time-barred. It was frivolous to file those untimely claims, and it was improper to refuse to withdraw them after Rule 11 safe harbor notice was clearly given. Accordingly, Brian E. Devilling, Paul Bozych, and Clausen Miller PC shall pay defendants' reasonable attorneys' fees and costs in defending against Counts IV and V. Defendants may file a petition for reasonable attorneys' fees and costs by August 20, 2007. *See* LR 54.3 (d), (e) and (f) for procedures.

ENTER:

July 20, 2007

Suzanne B. Conlon
United States District Judge