IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES CAPUANO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 06 C 5924 |
| ) | |
| CONSOLIDATED GRAPHICS, INC., ) | Suzanne B. Conlon, Judge |
| MULTIPLE IMAGES, INC., and ) | |
| MULTIPLE IMAGES ACQUISITION ) | |
| COMPANY ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

James Capuano ("Capuano") brought a five-count complaint against his former employer Consolidated Graphics, Inc. and two of its subsidiaries, Multiple Images, Inc. and Multiple Images Acquisition Company (collectively, "defendants"), alleging breach of contract (Count I), violation of the Illinois Wage Payment Collection Act, 820 I.L.C.S. § 115 (Count II), unenforceability of the noncompetition agreement (Count III), and violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Count IV), and the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. § 5 *et seq.* (Count V). Counts IV and V were subsequently dismissed with prejudice. *See* Dkt. No. 62 (July 20, 2007). Capuano claims that defendants breached their employment and noncompetition agreement by failing to timely notify him of any intent to terminate his employment and pay his remaining salary. In addition to damages, Capuano seeks a declaratory judgment rendering the noncompetition agreement void and unenforceable.

Defendants counterclaim, alleging that Capuano breached the noncompetition agreement by engaging in and diverting business (and employees) to their competitor Allout, Inc. ("Allout").

Defendants moved for summary judgment on all remaining claims and the counterclaim. Summary judgment was denied. *See* Dkt. No. 63 (Aug. 2, 2007).

Trial begins on October 10, 2007. The parties move *in limine* to bar evidence at trial. For the reasons set forth below, Capuano's motions are denied. Defendants' motions are granted and denied in part.

## DISCUSSION

### I. Motions *in Limine*

#### A. Legal Standard

Evidence is excluded on a motion *in limine* only if the evidence is clearly inadmissible for any purpose. *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) (Conlon, J.). Motions *in limine* are disfavored; admissibility questions should be ruled upon as they arise at trial. *Id.* Accordingly, if evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context. *Id.* Denial of a motion *in limine* does not mean evidence contemplated by the motion will be admitted at trial. *Id.* Instead, denial means the court cannot, or should not, determine whether the evidence in question should be excluded before trial. *Id.*; *see also United States v. Connelly*, 874 F.2d 412, 416 (7th Cir.1989) ("a ruling [on motion *in limine* is] subject to change based upon the court's exposure to the evidence at trial"). The moving party bears the burden of presenting sufficient evidence to meet the high standard applicable to motions *in limine*. *See Clipco, Ltd. v. Ignite Design, LLC,* No. 04 C 5043, 2005 WL 2861032, at *2 (N.D. Ill. Oct. 28, 2005) (Conlon, J.).

#### B. Capuano's Motions

### 1. Evidence Regarding Damages

Capuano seeks to exclude evidence regarding defendants' purported damages. In particular, Capuano argues (1) defendants' damages calculation of over $6 million should be excluded because it was not previously disclosed in accordance with Fed. R. Civ. P. 26; (2) evidence of damages as a result of Capuano's brokering to Allout should be excluded because it is speculative; (3) testimony regarding Capuano's alleged acts and omissions in breach of the non-competition clause should be excluded because they are speculative; (4) evidence of lost profits should be excluded because causation is speculative; and (5) testimony regarding damages should be barred because the non-competition agreement is unenforceable.

#### a) *Defendants' $6+ million damages calculation*

Capuano argues that he is prejudiced by defendants' failure to provide the $6+ million calculation of damages in keeping with Fed. R. Civ. P. 26. Rule 26(a)(1)( C) provides, "a party must, without awaiting discovery requests, provide to other parties . . . a computation of any category of damages claimed by the disclosing party." Rule 26(e)(1) further instructs that parties are under a "duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." To ensure compliance with these discovery requirements, Rule 37(c)(1) provides, in pertinent part: "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required under Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1).

The sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless. *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998). However, "[t]he determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1363 (7th Cir. 1996); *see also Salgado*, 150 F.3d at 739. The following factors guide the district court's discretion: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *See David v. Caterpillar*, 324 F.3d 851, 857 (7th Cir. 2003). Ultimately, the effect of Rules 26(e) and 37 is to exclude undisclosed evidence unless the information is made known to the other side in the context of the case itself. *See Se-Kure Controls, Inc., v. Vanguard Prod. Group.*, No. 02 C 3767, 2007 WL 781253, at *6 (N.D. Ill. Mar. 7, 2007) (Cole, M. J.).

Capuano argues that defendants never disclosed their computation of damages until long after the discovery cut-off, resulting in prejudice. On April 20, 2007, defendants provided an interrogatory answer that stated the amount of damages "will be determined through the development of discovery in this case," citing as an example unascertained losses stemming from a particular client account. *See* Pl. Mot. #1 Ex. B. at 4. Defendants contend in response (1) that Capuano never objected to the lack of disclosure; (2) that the evidence defendants intend to rely on was made known to Capuano during discovery; (3) that the exact calculation of damages was unknown until after discovery closed; and (4) that any undisclosed evidence is harmless.

Although the court does not condone defendants' failure to provide a computation of

4

damages consistent with Rule 26(a)(1)( C) or Rule 26(e), the failure to disclose computation evidence was not prejudicial to Capuano and does not merit exclusion on a motion *in limine*. Defendants assert that their damages calculation is based principally on testimony by Tom Simunek and other documents in Capuano's possession. Capuano chose not to depose Tom Simunek (and Phil Wicklander) – even though initial disclosures indicated he had direct knowledge of Capuano's "efforts to compete with Defendant in violation of the agreement." *See* Pl. Mot. #1 Ex. A at 1. Capuano's failure to depose Simunek or Wicklander with respect to damages cannot be said to have prejudiced him since their identities and relevance were disclosed at the outset. *See, e.g., Se-Kure Controls,* 2007 WL 781253, at *6 - 11 (denying motion to exclude witness declarations where identity of witnesses was previously disclosed). Second, defendants have asserted that they intend to rely on documents and information known to Capuano before commencement of this case. *See* Def. Opp. #1 at 2 - 3. Specifically, these documents reveal Multiple Images' prior profits and its purchase price. *Id.* The prior disclosures cure any prejudice to Capuano. The motion to exclude defendants' calculation of damages is denied because the failure to disclose the computation of damages is harmless. Capuano may object at trial to exhibits pertaining to damages that were previously undisclosed.

> *b)* *Defendants' purported damages from Capuano's brokering print jobs to Allout*

Capuano moves to bar evidence of his alleged brokering of print jobs in violation of the noncompetition agreement. He claims the evidence is speculative because brokering print jobs to other companies is impossible to substantiate. Defendants contend that the evidence is not speculative, and they proffer evidence that purports to show that work was specifically diverted from

defendants' business to Allout.

Under Illinois law, the plaintiffs (here, the counterclaim plaintiffs) bear the burden of proving damages, and must show that damages are not speculative. *See, e.g., Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill.2d 306, 316, 515 N.E.2d 61, 66 (Ill. 1987). Although there is an issue as to the speculative nature of the evidence defendants may proffer to prove damages, Capuano's motion to bar this evidence is premature on a motion *in limine*. The fact that evidence is seemingly speculative in discovery does not preclude defendants from proffering the evidence at trial, where a ruling on the speculative nature of the evidence may properly be made. *See, e.g., Hawthorne*, 831 F. Supp. at 1401 ("without the context of trial, the court is unable to determine whether the evidence in question should be excluded").

### c) *Testimony regarding Capuano's breach of the non-competition agreement*

Capuano moves to bar testimony that he purportedly assisted Allout by soliciting defendants' employees for hire and providing financial and professional assistance to Allout. Capuano argues that he flatly denies soliciting defendants' employees or directly assisting Allout in general, and the record has only shown speculative testimony regarding defendants' allegations. However, defendants respond that Capuano refrained from deposing witnesses (Simunek and Wicklander) who were identified by defendants as having direct knowledge regarding evidence that Capuano breached the noncompetition agreement.

Capuano has not demonstrated why *all* testimony relevant to defendants' claim should be barred simply because certain deposition testimony is speculative. What is more, Capuano failed to depose witnesses who defendants claimed have direct knowledge pertinent to its counterclaim.

6

To exclude evidence pertaining to defendants' allegations would be premature *in limine*.

### d) *Evidence of defendants' lost profits*

Capuano seeks to bar evidence of defendants' damages calculation to the extent it is based on lost profits, because proximate cause is speculative and uncertain. Capuano supports his argument with conclusory assertions that proximate cause does not exist because it is unsupported by the record. Conclusory assertions are insufficient to warrant exclusion of all evidence pertaining to damages on a motion *in limine*. Indeed, whether Capuano's acts or omissions proximately caused defendants' lost profits is a disputed fact for a jury to decide.

### e) *Testimony regarding damages*

Capuano contends all evidence pertaining to damages should be excluded because the noncompetition agreement is unenforceable. Apart from conclusory statements, Capuano does not provide further reasoning to bar damages evidence on a motion *in limine*. Capuano may not avoid the rigor required for a summary judgment motion to conclusively assert that the underlying contract is unenforceable. *See, e.g., Schuster v. Shepard Chevrolet*, 99 C 8326, 2002 WL 507130, at *11 (N.D. Ill. Apr. 3, 2002) (Schenkier, M.J.) (denying a motion *in limine* in part because the party's motion would have been better raised as a summary judgment motion). His motion is denied.

### 2. Evidence of Capuano's Financial Status and Multiple Images' Purchase Price

Capuano seeks to bar evidence of his sale of Multiple Images to defendants for $5 million. Capuano claims this evidence is irrelevant and prejudicial because the contract for sale is independent of the noncompetition agreement, and the purchase price is prejudicial insofar as it unfairly refers to his wealth and financial status. Defendants counter that the purchase price of

the company is relevant as it manifests consideration for the underlying noncompetition agreement, and that exclusion would prejudice defendants. Defendants' argument is persuasive.

Contrary to Capuano's characterization, the noncompetition agreement expressly sets forth that the sale of the company (the "Asset Purchase Agreement") served as "inducement" to execute the employment and noncompetition agreement. *See* Pl. First Am. Cmplt Ex. A at 1. Thus, the sale price of the company is relevant because it reveals, at the very least, the threshold issue of whether adequate consideration was given to form an executory contract.

Capuano's alternative argument that evidence of the purchase price should not be excluded because it prejudicially shows his wealth and financial status is also unpersuasive. Apart from claiming that the danger of unfair prejudice outweighs the marginal probative value of the evidence, Capuano does not provide any details or context of prejudicial effect. Instead, Capuano cites *Van Bumble v. Walmart Stores, Inc.*, 407 F.3d 823, 826 (7th Cir. 2005) in support of his argument. *Van Bumble* is distinguishable as it involved exclusion of a plaintiff's financial poverty in a negligence action where the plaintiffs' wealth was not at issue. Here, the purchase price of the company is relevant to the underlying contract dispute. Capuano has not shown why its inclusion directly implicates his wealth or financial status to constitute undue prejudice or jury confusion. Although the purchase price of a company may suggest Capuano's overall financial wealth, the $5 million sum is a discrete number, bearing specifically on the underlying transaction. Capuano seems to infer that evidence of his wealth may pit a jury against him, but excluding the purchase price may also confuse or mislead the jury about the underlying agreement. Capuano's motion is premised on the faulty notion that evidence giving any indicia of his financial wealth should be excluded. However, the purchase price of the company and

evidence of the sale of the company itself (which Capuano has not objected to) *is* directly relevant. Capuano has not specified how the probative value of this evidence is substantially outweighed by the danger of unfair prejudice.

### 3. Evidence of Capuano's Alleged Personal Use of a Company Repairman

Capuano seeks to bar all testimony regarding his alleged personal use of a company repairman because the testimony is speculative. Capuano specifically identifies defendants' CEO Joe Davis' deposition testimony regarding this matter as speculative, but does not demonstrate why *all evidence* pertaining to the underlying allegation should be barred on a motion *in limine*. As defendants contend, Capuano failed to depose disclosed witnesses who they claim have direct knowledge pertaining to this allegation. Capuano's motion is therefore premature.

### C. Defendants' motions

### 1. Evidence of Capuano's Military Service and Medical Condition

Defendants move to bar evidence and argument of details of Capuano's military service and medical condition because they are irrelevant and unduly prejudicial under Fed. R. Evid. 401, 402, and 403. Defendants claim that upon dismissal of Capuano's ADA and IHRA claims, testimony regarding his military service and medical condition became irrelevant to the remaining breach of contract claims. In the alternative, defendants argue that even if this evidence is relevant, its probative value is outweighed by its prejudicial effect. Capuano submits that his military service is relevant to evaluate his credibility, and that his ability to build Multiple Images in spite of his physical ailments is relevant to his prevention/hindrance defense, insofar as it shows that any decline in profit was not due to his inability. Otherwise, Capuano

9

concedes that evidence regarding his physical condition was only directly relevant to his dismissed discrimination claims.

In order for evidence to be relevant, it must have "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Both parties recognize that detailed evidence of Capuano's military service and medical condition are collateral to the issues underlying the breach of contract claims. However, Capuano maintains that this evidence is still relevant as indicative of Capuano's credibility and business savvy.

It is apparent that any arguable probative value (of details about Capuano's military history and physical condition) is substantially outweighed by the likelihood of prejudice to defendants from potential jury sympathy and confusion of issues relevant to the breach of contract claims. *See, e.g., Mayoza v. Heinold Commodities, Inc.*, 871 F.2d 672, 276-77 (7th Cir. 1989) (barring evidence of plaintiff's heart condition because its minimal relevance was outweighed by its prejudicial effect). Moreover, evidence of Capuano's physicial condition could serve to confuse the jury about the reasons for Capuano's termination, which is at the core of this dispute. Capuano may establish his credibility and business savvy in alternative ways without unfair prejudice to defendants.

### 2. Evidence of Defendants' Alleged Prevention/Hindrance

Defendants move to bar Capuano from mentioning any evidence of defendants' alleged acts or omissions that prevented or hindered Capuano from performing his contract so as to merit justifiable termination. Defendants assert that by virtue of Capuano's concession that defendants did not purposefully or intentionally limit the profitability of the company, any evidence

supporting a prevention or hindrance theory is moot and irrelevant under Illinois law. Capuano responds that whether defendants specifically intended to prevent Capuano from meeting the profits threshold is inconsequential under settled Illinois law, and if specific intent were required under the defense, it would lead to illogical incentives in contracts containing profitability threshold clauses.

Illinois contract law is unclear as to whether a party preventing a counterparty's performance is required as a matter of law to have acted with specific intent. *Compare Oakleaf of Illinois v. Oakleaf & Assoc., Inc.*, 173 Ill. App. 3d 637, 648, 527 N.E.2d 926, 933 (Ill. App. Ct. 1988) (generally holding that a party whose actions preclude performance by the other party may not, however, complain of the second party's nonperformance), *and Lukasik v. Riddell, Inc.*, 116 Ill. App. 3d 339, 346, 452 N.E.2d 55, 59 (Ill. App. Ct. 1983) ("a party cannot take advantage of a condition precedent which he has rendered impossible or complain of a failure to perform which he himself has prevented."), *with Yale Dev. Co., Inc. v. Oak Park Trust & Sav. Bank*, 26 Ill. App. 3d 1015, 1020, 325 N.E.2d 418, 422 (Ill. App. Ct. 1975) ("a party who deliberately prevents the fulfillment of a condition on which his liability under a contract depends cannot take advantage of his own conduct and claim that the failure of the fulfillment of the condition defeats his liability"), *and Eggan v. Simonds*, 34 Ill. App. 2d 316, 320, 181 N.E.2d 354, 356 (Ill. App. Ct. 1962) (same). To the extent the doctrine applies to "wrongful conduct," Illinois courts employ the term "unjustly" in reference to the doctrine. *See, e.g., Levy v. Am. Auto. Ins. Co.*, 31 Ill. App. 2d 157, 164, 175 N.E.2d 607, 610-611 (Ill. App. Ct. 1961) ("one who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition"). Although the specific intent of a party preventing performance is not

11

necessarily "inconsequential" (as Capuano argues), Illinois precedent does not clearly require specific intent to be present for the doctrine of prevention/hindrance to apply.

Notwithstanding Capuano's admission that defendants did not "purposefully" keep Multiple Images from profitability, there is still an issue – to be resolved by a jury – as to whether any of defendants' actions were "unjust" so as to implicate the prevention doctrine. This is especially true because Capuano maintains that he failed to reach the contractual threshold based on factors outside his control, but within defendants' control. *See, e.g., Barrows v. Maco, Inc.*, 94 Ill. App. 3d 959, 968, 419 N.E.2d 634, 640 (Ill. App. Ct. 1981) (prevention doctrine applied where failure to abide by contract terms was caused by defendants and was outside plaintiff's control). Due to these unresolved questions, defendants' motion to bar all evidence pertaining to Capuano's prevention/hindrance defense is denied.

## CONCLUSION

For the reasons set forth above, defendants motion to bar detailed evidence about Capuano's military service and medical condition is granted. The remaining motions *in limine* are denied.

ENTER:

*[signature]*

Suzanne B. Conlon
United States District Judge

September 7, 2007